## EMILIUSEN v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Division, Second Department. May 7, 1898.)

1. CARRIERS—TUGBOATS.
    A tugboat is not a common carrier.
2. TOWAGE—NEGLIGENCE.
    The plaintiff, the owner of a canal boat, employed the defendant to tow it from New York to South Amboy. When the boats arrived there, there were no indications of a storm, and, although plaintiff's boat was consigned to the so-called "Wyoming Slip," the defendant, in pursuance of a custom which it had followed for 10 years in towing plaintiff's boats, left the boat at the so-called "Old Freight Dock," which is not sheltered from the open bay, to await notice that the shippers were ready to load the boat. During the night a hurricane came up, and the boat was sunk. Held, that the defendant was not guilty of negligence in following out the custom.

Appeal from trial term, Kings county.

Action by Frederick Emiliusen against the Pennsylvania Railroad Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

La Roy S. Gove (James J. Macklin, on the brief), for appellant.
Henry Galbraith Ward, for respondent.

GOODRICH, P. J.    The plaintiff was the owner of the canal boat
J. N. Thompson, and on August 23, 1893, employed the defendant to
tow it from New York to South Amboy, N. J., where it was consigned
to the Wyoming slip, for the purpose of loading a cargo of coal to be
transported to New York.    The defendant's tugboat Brinton took
the Thompson, with other boats, in tow, and, on arriving at South
Amboy, left them at what is known as the "Old Freight Dock," which
is not sheltered from the open bay.    The plaintiff made his own boat
fast outside of four other boats which were moored to the dock.    This
was at noon of the 23d.    It does not appear that there were at this
time any indications of a storm.    Indeed, the certificate of the
weather bureau, produced by the plaintiff, only contains statements
of the velocity of the wind from 6 o'clock in the evening of the 23d to
4 or 6 o'clock of the morning of the 24th.    It may be assumed that,
if there was anything in the reports of the weather bureau to show a
threatened storm at noon of the 23d, when the boat tied up, the plain-
tiff would have had the blanks in the certificate as to the condition
of the weather from 12 to 6 o'clock filled.    There are two of such cer-
tificates, one of which shows the velocity of the wind at Sandy Hook
at 6 o'clock to have been 11 miles, and the other shows the velocity at
New York City, at the same hour, to have been 17 miles.    From that
hour the wind increased, and attained a velocity at Sandy Hook of
70 miles an hour, which, in marine parlance, constitutes a hurricane.
The plaintiff testifies that the storm came up on the evening of the
23d, that he had no anxiety about his boat until midnight, and that
between that hour and early morning the boat was sunk by the storm.
At the close of the plaintiff's case the court directed a dismissal of
the complaint, and from the judgment entered thereon the plaintiff
appeals.

The main contention of the plaintiff is that by the contract between
him and the defendant the tug was bound to take his boat to Wyoming
slip, instead of leaving it at the old freight dock; but his own testi-
mony shows that he has been towed by the defendant during the last
10 years, and that the custom has always been to leave empty boats at
the old freight dock until notified by shippers of the coal of their readi-
ness to load, when the boats are taken into Wyoming slip.    The con-
tract was made in the light of this custom, and the defendant was
not guilty of negligence in following out the custom.    It was not
negligent of the defendant to leave the Thompson at the old freight
dock until the load was ready for her, at a time when there was no
indication of any approaching storm; nor was the defendant bound
to remove the boat until notice so to do.    A tugboat is not a com-
mon carrier.    This is elementary in maritime law, which imposes
upon the tugboat no greater duty than that it shall carry out its
undertaking with reasonable caution and skill such as prudent navi-
gators usually employ in similar services.    The Webb, 14 Wall. 406.
The learned counsel for the plaintiff cites a number of additional au-
thorities in respect of which it is sufficient to say that they are cases

where the tugboat either left its tow in an exposed berth at a time when danger was imminent or failed to discharge its responsibility before the termination of its contract of towage. In the present ·case the tug had temporarily ended its service, and had left the boat at its mooring, at a time when no danger could be reasonably appre-hended.

I think the complaint was properly dismissed, and that the judg-ment should be affirmed. All concur.